UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RICHARD YOUNG,

                Petitioner,            Case No. 2:19-cv-196

v.                                 Honorable Hala Y. Jarbou

CONNIE HORTON,

                Respondent.

_____/

## OPINION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Richard Young is currently incarcerated at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On May 18, 2016, following a six-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted of three counts of armed robbery, in violation of Mich. Comp. Laws § 750.529. On July 15, 2016, the trial court sentenced Petitioner as a third-offense habitual offender, Mich. Comp. Laws § 769.11, to three concurrent sentences of 20 to 40 years' incarceration.

       Petitioner filed his federal habeas petition in the United States District Court for the Eastern District of Michigan on September 6, 2019. The Eastern District transferred the petition to this Court on September 26, 2019. (ECF No. 5.) Petitioner raised the following six grounds for relief in his petition:

    I.      There was insufficient evidence to convict [Petitioner] of armed robbery.

    II.     The trial court erred in scoring OV 9 and resentencing is required because the recommended minimum sentencing range was affected.

III.    [Petitioner] was denied his rights to due process and fair trial when counsel failed to object to a prosecution[ ] motion to join together Young's trial with his co-defendant which caused serious bias and prejudice to Young's trial.

IV.    [Petitioner] was denied his constitutional right to effective assistance of counsel when defense counsel Goldstein failed to object to prosecutorial misconduct and renew [Petitioner's] motion to introduce [Hampton's polygraph results] to the jury consistent with a previous court ruling.

V.    Prosecutorial misconduct during both opening and closing argument denied [Petitioner] his due process rights to a fair trial.

VI.    [Petitioner's] right to due process was violated when the prosecution allowed its sole witness against [Petitioner] to give testimony that he knew to be false to [Petitioner's] jury without correcting it which caused severe prejudice and denied Young his right to a fair trial.

(Pet., ECF No. 1, PageID.3-4.)

In an order (ECF No. 10) entered on October 3, 2019, the Court ordered Respondent to file an answer and the state court record within 180 days. On March 31, 2020, Respondent filed a motion to dismiss for failure to exhaust, as well as the state court record. (ECF Nos. 14, 15.) The Court subsequently received a letter from Petitioner indicating that he was abandoning habeas ground II because it was unexhausted. (ECF No. 16.) In an order (ECF No. 17) entered on September 2, 2020, the Court struck the motion to dismiss, noting that it was moot because Plaintiff had voluntarily dismissed the unexhausted claim. (*Id.*, PageID.1328.) The Court also construed Plaintiff's letter as a request to amend his petition to strike habeas ground II and granted that request. (*Id.*) The Court directed Respondent to file an answer addressing the merits of Petitioner's remaining claims within 180 days. (*Id.*, PageID.1329.)

Before Respondent's time to file an answer expired, Petitioner moved the Court to stay these proceedings and hold his petition in abeyance. (ECF No. 19.) Petitioner represented that he wished to return to state court to exhaust claims of ineffective assistance of trial and appellate counsel, as well as claims of prosecutorial misconduct. (*Id.*) In an order (ECF No. 20) entered on

2

October 8, 2020, the Court granted Petitioner's motion and directed that Petitioner file his motion for relief from judgment pursuant to Michigan Court Rule 6.500 in state court within 30 days, if he had not already done so. (*Id.*, PageID.1338.) The Court advised Petitioner that the matter would remain stayed until Petitioner filed a motion to amend his petition to include any subsequently exhausted claims, and that such motion "must be filed not later than 30 days after a final decision by the Michigan Supreme Court on Petitioner's unexhausted claims." (*Id.*) The Court also advised that if Petitioner failed to comply with the imposed deadlines, his petition could be dismissed. (*Id.*)

Petitioner never returned to this Court. Instead, on April 12, 2024, Respondent filed a motion to reopen and dismiss this action for Petitioner's failure to comply with the stay conditions. (ECF No. 21.) Respondent represented that Petitioner filed his Rule 6.500 motion in state court on November 10, 2020, one day past this Court's 30-day deadline for doing so, and that the state trial court denied the motion on November 23, 2020. (*Id.*, PageID.1341–1342.) Respondent stated that Petitioner "did not seek leave to appeal that decision in either the Michigan Court of Appeals or the Michigan Supreme Court." (*Id.*, PageID.1342.) Respondent averred that because Petitioner has not sought to reopen this matter within the past three years, his petition should be dismissed with prejudice for want of prosecution. (*Id.*)

In an order (ECF No. 22) entered on May 15, 2024, the Court granted Respondent's motion to the extent it sought for the case to be reopened, directed the Clerk to reopen the case, and lifted the stay imposed by order entered on October 8, 2020. The Court, however, denied Respondent's motion to the extent that it sought dismissal of this action with prejudice for want of prosecution. The Court noted that it would address the merits of Petitioner's remaining grounds in a separate opinion.

Respondent subsequently moved for leave to file an answer to Petitioner's § 2254 petition. (ECF No. 23.) In an order (ECF No. 24) entered on May 20, 2024, the Court granted Respondent's motion and directed that any answer be filed by July 19, 2024. Respondent filed her answer as well as additional documents from the state court record on July 18, 2024. (ECF Nos. 29, 30.) Petitioner filed his reply on August 26, 2024. (ECF No. 31.)

Upon review of the record, and for the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

<u>**Discussion**</u>

## I.     Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> On November 21, 2015 at approximately 11:30 a.m., a man walked into the PNC Bank at 2521 Capital Avenue Southwest in Battle Creek and robbed three tellers. He entered a car with two other individuals and fired numerous shots at officers who responded to the robbery. The prosecution's theory of the case was that Williams was the perpetrator and was aided and abetted by [Petitioner] and their friend, Whitney Hampton (Hampton). Hampton was the driver and [Petitioner] was the front seat passenger. Hampton provided accomplice testimony at defendants' joint trial.

*People v. Williams*, Nos. 333904, 334113, 2017 WL 5615792, at *1 (Mich. Ct. App. Nov. 21, 2017).[1]

Prior to trial, the State filed a motion to join Petitioner and Williams' criminal cases for trial. (ECF No. 15-3, PageID.186.) The State moved for joinder on the basis that Hampton would be testifying against each Defendant, as well as the fact that there were "about 34 witnesses

---

[1] Petitioner's appeal was consolidated with his co-defendant's appeal "to advance the efficient administration of the appellate process." (ECF No. 15-13, PageID.1076.)

involved from the culmination of the bank robbery to the actual police chase and then the shootout with Defendant Williams." (*Id.*) The prosecutor represented that Petitioner was not objecting to joinder, and Petitioner's counsel agreed with that statement. (*Id.*, PageID.187.) Counsel asked the court if he could place his reasons for not objecting on the record, which the court allowed. (*Id.*, PageID.194.) Counsel stated that he recognized that even in separate trials, there was a "good chance" that the prosecution would be permitted to present evidence regarding Williams' having been charged with assault with intent to commit murder, since it was "part of the res gestae of the robbery." (*Id.*, PageID.195.) Second, counsel noted that Williams had made a statement, and that he would be unable to 'get that statement in front of a jury in a separate trial." (*Id.*)

Subsequently, on May 2, 2016, the trial court held a hearing regarding Petitioner's motion to allow introduction of Hampton's polygraph results at trial. (ECF No. 15-4.) Counsel noted that the polygraph results had been inconclusive. (*Id.*) The judge indicated that she had found "absolutely nothing that would allow this Court to let those in front of the jury." (*Id.*, PageID.202.) Petitioner's counsel noted that he had not "found any Michigan cases," but that it was an "issue of fundamental fairness" and due process. (*Id.*) Counsel represented that it would not be ethical for the State to use Hampton as a witness if there were "serious doubts as to [her] credibility." (*Id.*, PageID.203–204.) The trial court denied the motion, noting that the law was clear that polygraphs "have been consistently held to be unreliable." (*Id.*, PageID.205–206.) The court did note, however, that counsel could renew the motion if "something happen[ed] during trial on the direct examination of that witness that would lead to believe that they have—prosecution has opened the door to cross-examination on this issue." (*Id.*, PageID.206.)

Jury selection for Petitioner's trial occurred on May 10 and 11, 2016. (Trial Tr. I & II, ECF Nos. 15-5, 15-6.) Over the course of the next four days, the jury heard testimony from numerous

witnesses, including Hampton. (Trial Tr. III, IV, V, & VI, ECF Nos. 15-7, 15-8, 15-9, 15-10.) On May 18, 2016, after only an hour of deliberation, the jury reached a guilty verdict. (Trial Tr. VII, ECF No. 15-11, PageID.1043.) Petitioner appeared before the trial court for sentencing on July 15, 2016. (ECF No. 15-12.)

Petitioner, with the assistance of appellate counsel, appealed his convictions and sentence to the Michigan Court of Appeals. In his counseled brief, Petitioner raised the following claims for relief: (1) there was insufficient evidence to convict Petitioner of armed robbery; and (2) the trial court erred in its scoring of Offense Variable (OV) 9, requiring resentencing because the recommended minimum sentencing range was affected. (ECF No. 15-13, PageID.1137.) In a *pro per* supplemental brief, Petitioner raised the following additional claims: (1) he was denied due process when counsel failed to object to the State's motion for joinder; (2) he was denied effective assistance of counsel when counsel failed to object to prosecutorial misconduct and renew the motion to introduce Hampton's polygraph results; (3) prosecutorial misconduct occurred during opening and closing arguments; and (4) he was denied due process when the prosecution allowed a witness to give false testimony without correcting it. (*Id.*, PageID.1168.) The court of appeals rejected Petitioner's arguments and affirmed his convictions and sentences, as well as those of his co-defendant, on November 21, 2017. *Williams*, 2017 WL 5615792, at *1.

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, raising all the claims he raised in the court of appeals except for his claim concerning the scoring of OV 9. (ECF No. 15-14, PageID.1243–1247.) The supreme court denied Petitioner's application on September 12, 2018. *See People v. Young*, 917 N.W.2d 66 (Mich. 2018). This § 2254 petition followed. As noted *supra*, Petitioner has abandoned habeas ground II, his claim

concerning the scoring of OV 9. Accordingly, the Court will address only habeas grounds I, III, IV, V, and VI.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ground I—Sufficiency of the Evidence

As his first ground for relief, Petitioner contends that the State presented insufficient evidence for the jury to convict Petitioner of armed robbery. Petitioner raised this claim on direct appeal, and the court of appeals reviewed his claim under the following standard:

> "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v. Reese*, 491 Mich. 127, 139, 815 N.W.2d 85 (2012) (quotation marks omitted)."

*Williams*, 2017 WL 5615792, at *5.

Although the court of appeals cited state authority, the standard applied is identical to the constitutional "sufficiency of the evidence" standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires the court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams v. Taylor*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination regarding Petitioner's sufficiency of the evidence challenge is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Here, the court of appeals followed *Jackson*'s command. The court of appeals first noted that Petitioner was convicted "as an aider and abettor" and set forth the elements that the

prosecution had to prove to convict Petitioner under that theory. *See Williams*, 2017 WL 5615792, at *5–6. The court of appeals then considered the evidence in a light that favored the prosecution:

> There was sufficient evidence to support Young's conviction. Hampton testified that she was with Williams and Young when they discussed "hitting a lick." Although there was no real concrete plan at the time, Hampton understood this to mean that there was going to be a robbery. Both men indicated that they would need Hampton's help and that she would be driving. Although Hampton did not see Young with either the long gun or the handgun, she suspected that he was the one that put the long gun in her car. Hampton had previously moved the handgun from the kitchen into Young's room. Hampton also saw Young hand Williams the drawstring bag Williams used during the robbery. Hampton testified that Young called Chemical Bank and found out that it was closed, which caused them to go to PNC instead. She testified that Young tried to keep her calm while Williams was inside the bank and that Young encouraged her to flee from police. Once caught, Young encouraged Hampton to tell police that they had been car-jacked.

> Young complains that there was no competent evidence tying him to the crime, but it is clear that he really argues that Hampton was not worthy of belief and that there were simply too many inferences to support his conviction. "[T]he elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence." *People v. Dunigan*, 299 Mich. App. 579, 582, 831 N.W.2d 243 (2013). "It is the jury's duty to determine the weight to be accorded any inferences," *id.*, and an appellate court must "not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v. Eisen*, 296 Mich. App. 326, 331, 820 N.W.2d 229 (2012). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v. Kanaan*, 278 Mich. App. 594, 619, 751 N.W.2d 57 (2008). Based on reasonable inferences, there was sufficient evidence that Young aided and abetted in the robbery. He performed acts and gave encouragement that assisted Williams in committing the crime.

*Williams*, 2017 WL 5615792, at *6.

In his § 2254 proceedings, Petitioner essentially relies upon the arguments that he raised in—and that were rejected by—the court of appeals. To prevail on his sufficiency claim now, Petitioner must show that the inferences urged by the appellate court are unreasonable. Notably, "[t]he facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear and convincing evidence; he has not. He does

not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.

In *Coleman v. Johnson*, 566 U.S. 650, 655 (2012), the Supreme Court provided some guidance with respect to the distinction between a reasonable inference and mere speculation. Based on the Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is hardly an earth-shattering revelation, and it is not a particularly onerous burden. The Court went so far as to say, "the only question under *Jackson* is whether [a] finding is so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Petitioner has offered nothing from which this Court could conclude that the court of appeals' inferences were irrational. Certainly, one could interpret the underlying events differently and reach the opposite conclusions, but that does not render the court of appeals' conclusions and inferences irrational. Petitioner, therefore, has failed to meet his burden.

In his reply, Petitioner reiterates his assertion that Hampton was not credible because she "has a conviction for lying to the police, along with other criminal charges, that which would weigh on her ability as to being a trustworthy person." (ECF No. 31, PageID.1496.) Petitioner's argument essentially invites this Court to reweigh Hampton's credibility and resolve all conflicts and make all inferences in his favor. Under *Jackson*, a habeas court is not required to sift through the evidence and place it on one side of the scale or the other for the purpose of assessing whether the jurors' estimation of the balance is correct. Instead, the Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt considering that evidence. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences are reasonable. *See Herrera*, 506 U.S. at 401–02; *Martin*,

280 F.3d at 618. Petitioner's invitation to reweigh Hampton's credibility turns the *Jackson* standard on its head.

In sum, Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support Petitioner's armed robbery convictions is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground I.

### B.    Grounds Asserting Prosecutorial Misconduct

Petitioner raises two grounds of prosecutorial misconduct in his § 2254 petition. In grounds V, Petitioner contends that the prosecutor committed misconduct during opening statements and closing arguments. In ground VI, Petitioner contends that the prosecution allowed a witness to give false testimony against Petitioner.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

### 1.    Opening Statement and Closing Argument

In ground V, Petitioner contends that the prosecutor committed misconduct during opening statements and closing arguments. Petitioner offers no factual allegations to support this assertion. However, on direct appeal, Petitioner raised the following claim:

> Young argues that the prosecutor improperly informed the jury during opening statements that Hampton saw at least one of the guns at Young's house and that Young helped look for banks to rob. Young maintains that Hampton did not testify that she saw Young with any of the guns and, in fact, testified that she did not know where the guns came from. Young claims that the prosecutor further misrepresented Hampton's testimony during closing argument when the prosecutor indicated that Young had supplied Williams with the bag, which was inconsistent with Hampton's initial statement to police.

*Williams*, 2017 WL 5615792, at *9. The Court, therefore, construes Petitioner's § 2254 petition to assert the same arguments that he raised on direct appeal.

During opening statements, the prosecutor stated the following:

> Now, Mr. Young is the passenger, but Ms. Hampton is the driver. Mrs. Hampton—Ms. Hampton will be testifying in this case. She'll talk about how she saw at least one of the guns that were used in this instance in her—in the home that she was staying at with Mr. Young. And she's expected to testify how Mr. Young brought

(inaudible) the long gun in and how she had seen that handgun in that house before. Mr. Williams didn't live at that house.

So that's how Mr. Young is involved. He—he knew that this crime was going to occur and he helped in the planning of the crime. He helped him look for banks to rob and he supplied some of the guns.

(Trial Tr. II, ECF No. 15-7, PageID.380.)

During Petitioner's trial, Hampton testified that she had seen the "little black gun" that Williams had at Petitioner's house. (Trial Tr. IV, ECF No. 15-9, PageID.861–862.) Hampton testified that she was the one who had moved the gun from the bedroom. (*Id.*, PageID.862.) Hampton also testified that the "long black gun" had been in the house "before it got in [her] car." (*Id.*, PageID.864.) Hampton did not know who had put the gun in the car. (*Id.*) Hampton suspected that Petitioner was the one who had put the long gun in her car because she had left her coat in the car and the coat had suddenly appeared in the house on the day of the robberies. (*Id.*, PageID.865, 870.) Hampton admitted that she had "never really seen [the long gun] visually in the house." (*Id.*, PageID.869.)

On direct appeal, the court of appeals rejected Petitioner's argument concerning the prosecutor's alleged misleading statements, noting:

Here, the statements were not only made in good faith, but Hampton's later testimony supported the prosecutor's statement. Hampton testified that Williams left Hampton's car with a handgun that Hampton had seen at Young's house earlier that day. In fact, she had moved the handgun from the kitchen table into Young's bedroom. She did not know whose it was or how it got into Young's house. Hampton did not see the long gun that morning until she got in her car. While she did not see who put the long gun in her car, she suspected it was Young, explaining that she had left her coat in her car and that the coat suddenly appeared in the apartment. Young had used her car earlier that morning.

*Williams*, 2017 WL 5615792, at *9.

Given Hampton's testimony, the Court cannot conclude that the prosecutor misrepresented the expected testimony during opening statements such that the comments "so infected the trial

16

with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). "Not every variance between the advanced description of the prosecutor in the opening statement of the summary of the testimony that he or she expects to introduce, and the actual presentation constitutes a violation of the right to confrontation or reversible error, when a proper limiting instruction is given." *Redding v. Horton*, No. 19-13599, 2021 WL 1720899, at *6 (E.D. Mich. Apr. 30, 2021) (citing *Frazier v. Cupp*, 394 U.S. 731, 736 (1969)). Moreover, during final jury instructions, the trial court instructed the jury that "[t]he lawyer[s'] statements and arguments are not evidence." (Trial Tr. VI, ECF No. 15-11, PageID.1017.) A jury is presumed to follow its instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Petitioner also takes issue with the prosecutor's closing argument, asserting that the prosecutor "misrepresented Hampton's testimony during closing argument when the prosecutor indicated that Young had supplied Williams with the bag, which was inconsistent with Hampton's initial statement to police." *Id.* The court of appeals summarily rejected that assertion, noting that Petitioner had not provided any specific references to the record and that the prosecutor was "free to argue the evidence and all reasonable inferences arising from it as they relate to his theory of the case." *Id.*

During closing arguments, the prosecutor made the following statement:

> Well, before the crime, you heard from Whitney Hampton, he gives him the bag that's used in the robbery. Was there a different reason to give him the bag? NO. This bag was the one that was used in the armed robbery, this is what the money was put in. Mr. Young gave him the bag.

(Trial Tr. VI, ECF No. 15-11, PageID.977.) However, during trial, Hampton testified that she saw Williams take the bag into the bank, and that the bag came from Petitioner's house. (Trial Tr. IV, ECF No. 15-9, PageID.880.) She explicitly noted that Petitioner gave the bag to Williams. (*Id.*,

PageID.881.) Given Hampton's testimony, the prosecutor's statement during closing arguments was entirely consistent with the evidence presented.

For the foregoing reasons, Petitioner has not demonstrated that the court of appeals' rejection of this claim of prosecutorial misconduct is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground V.

### 2.    False Testimony

In ground VI, Petitioner contends that the prosecution allowed a witness to give false testimony against Petitioner. Again, Petitioner provides no factual allegations to support his assertion. However, on direct appeal, Petitioner argued that the prosecutor knowingly allowed Hampton to give perjured testimony. *See Williams*, 2017 WL 5615792, at *10.

The Fourteenth Amendment's right to due process prohibits a state from knowingly and deliberately using perjured evidence to obtain a conviction. *See Napue v. Illinois*, 360 U.S. 264, 260 (1959). The Supreme Court has recognized that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Presentation of perjured testimony, without more, however, does not rise to the level of a constitutional violation. *See Briscoe v. LaHue*, 460 U.S. 325, 327 (1983). Rather,

> [t]he knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).

The court of appeals rejected Petitioner's claim regarding the presentation of perjured testimony, stating:

> There is no evidence that the prosecutor had special knowledge that Hampton was lying at trial. For that matter, there is no evidence that Hampton, in fact, provided false testimony. Granted, she made numerous inconsistent statements to police, but that is insufficient to show that she lied during her testimony. Hampton acknowledged that she made many inconsistent statements to police and tried to make herself appear to be "as innocent as possible." This was fodder for cross-examination; it did not demonstrate that the prosecutor suborned perjury.

*Williams*, 2017 WL 5615792, at *10.

Petitioner offers nothing to suggest that the court of appeals' analysis is contrary to, or an unreasonable application of, clearly established federal law. Petitioner fails to establish that the testimony offered by Hampton at trial was false. Simply pointing out the inconsistencies between Hampton's testimony at trial and her statements to police does not suffice to show perjury. *See Lochmondy*, 890 F.2d at 822. Notably, Petitioner offers nothing from which this Court could conclude that the prosecutor knowingly offered perjured testimony.

Where Petitioner has not shown that the statements were false or that the prosecutor knew they were false, he is not entitled to relief with respect to this assertion of prosecutorial misconduct. Petitioner, therefore, is not entitled to relief with respect to habeas ground VI.

### C.      Grounds Asserting Ineffective Assistance of Counsel

In ground III, Petitioner contends that counsel was ineffective for failing to object to the prosecution's motion to join Petitioner's trial with his co-defendant's trial. In ground IV, Petitioner asserts that counsel was ineffective for failing to object to prosecutorial misconduct and for failing to renew his motion to introduce Hampton's polygraph results to the jury.

### 1.      Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a

claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the [Petitioner] resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The [Petitioner] bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the [Petitioner] is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Furthermore, scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*,

687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his ineffective assistance of counsel claims on direct appeal, and the court of appeals addressed them under the following standard:

> "To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. In order to demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms." *People v. Riley*, 468 Mich. 135, 140, 659 N.W.2d 611 (2003) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *People v. Pickens,* 446 Mich. 298, 302–303, 521 N.W.2d 797 (1994).

*Williams*, 2017 WL 5615792, at *4. There is no question that the court of appeals applied the correct standard. This eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. Therefore, because the court of appeals applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the determinations regarding ineffective assistance of counsel are unreasonable applications of *Strickland* or if the court of appeals' resolutions were based on unreasonable determinations of the facts. *See* 28 U.S.C. § 2254(d).

### 2.    Ground III—Failure to Object to Joinder

In ground III, Petitioner contends that counsel was ineffective for failing to object to the prosecution's motion to join Petitioner's trial with his co-defendant's trial. The court of appeals rejected this claim on direct appeal, stating:

> At a hearing on the prosecution's motion to join the two cases, Young's attorney indicated that he did not object to joinder:
>
> > As I said to the Court in chambers, 999 out of a thousand cases I would object to a joint (inaudible) trial. In this particular case, I don't for two reasons.

21

> One is, my one concern would be the testimony regarding the charge of
> assault with intent to commit murder, given particularly that the victim was
> a police officer. And I realize that would be prejudicial against my client,
> who is not charged with that.
>
> On the other hand, I think it's—at least pretty clear to me anyway—that
> there's a good chance that even in a separate trial, it is part of the res gestae
> of the robbery, that the Prosecutor would probably be able to get that in.
>
> Second of all, and more—much more important, Mr. Williams made a
> statement, which has some value to my client. I cannot get that statement in
> front of a jury in a separate trial, but I—but if the prosecution intends to use
> it against Mr. Williams in a joint trial, then—then the jury is going to hear
> it. And so those—those are the reasons that I did not object.

> It is clear that trial counsel's decision not to object to a joint trial was based on
> sound trial strategy. "A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to reconstruct the
> circumstances of counsel's challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. For
> that reason, "[w]e will not substitute our judgment for that of counsel on matters of
> trial strategy, nor will we use the benefit of hindsight when assessing counsel's
> competence." *People v. Unger*, 278 Mich. App. 210, 242–243, 749 N.W.2d 272;
> 253; 278 Mich. App. 210, 749 N.W.2d 272 (2008). Young proffers other avenues
> for addressing counsel's concerns, but those are speculative at best and would have
> depended upon the trial court's evidentiary rulings. In a joint trial, there was no
> doubt what evidence would be presented. Moreover, "[a] failed strategy does not
> constitute deficient performance." *People v. Petri*, 279 Mich. App. 407, 412, 760
> N.W.2d 882 (2008). Young has failed to demonstrate that counsel's performance
> was deficient or fell below an objective standard of reasonableness under prevailing
> professional norms.

*Williams*, 2017 WL 5615792, at *8.

As an initial matter, there is no due process right to a trial separate from one's co-

defendants; instead, the propriety of severance is generally governed by state law. *See* Mich. Ct.

R. 6.120, 6.121; *Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). "Misjoinder is

unconstitutional only if it results in prejudice so great as to deny a defendant his due process right

to a fair trial." *LaMar v. Houk*, 798 F.3d 405, 428 (6th Cir. 2015) (citing *United States v. Lane,*

474 U.S. 438, 446 n.8 (1986)). The Supreme Court has delineated few constitutional rules in this

area. The Court has held that separate trials are constitutionally required where the prosecution

intends to introduce the confession of a co-defendant that incriminates another defendant. *See Bruton v. United States*, 391 U.S. 123, 137 (1968). Beyond the rule set forth in *Bruton*, the Supreme Court has left the matter of severance to state law and the trial judge's discretion. The Supreme Court has declined to adopt a "bright line" rule requiring severance whenever co-defendants have conflicting defenses. *See Zafiro v. United States*, 506 U.S. 534, 538 (1993).[2]

Petitioner fails to offer anything to overcome the deference due to the court of appeals' decision and, therefore, fails to demonstrate how counsel's failure to object to the prosecution's motion for joinder prejudiced him in any way. As set forth above, counsel's strategy was to use a joint trial to make Petitioner appear less culpable than co-defendant Williams through the admission of a statement made by Williams. Indeed, during closing arguments, Petitioner's counsel referenced the statement that Williams made to police: "I did it, they didn't." (Trial Tr. VI, ECF No. 15-11, PageID.985.) Counsel also referenced the statement that Hampton made to police: "He did it, Mr. Williams. We didn't, Mr. Young and I." (*Id.*) Counsel noted that Hampton had a "perfect opportunity to make herself look even better" by also pinning blame on Petitioner, yet she did not do that in her initial statement to police. (*Id.*, PageID.986.)

Moreover, during final jury instructions, the trial court instructed the jury as follows:

---

[2] It is not readily apparent how the co-defendants' defenses were inconsistent. To the extent they were, *Zafiro* does not require a different result on habeas review. *Zafiro* is based on the Federal Rules of Criminal Procedure, not constitutional grounds. *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004) ("*Zafiro* involved the interpretation of Federal Rules of Criminal Procedure 8, 14, and 18, not the United States Constitution. *Zafiro* thus has no precedential weight in reviewing state court proceedings on due process grounds. . . ."). Thus, while *Zafiro*'s value as precedent in the habeas context is limited, the Court's analysis can be instructive. Even under the Federal Rules of Criminal Procedure, a simple conflict is not enough. *Zafiro*, 506 U.S. at 537–38. Indeed, describing a conflict as "mutually antagonistic" or "irreconcilable" may not be enough. *Id.* Rather, the rule requires severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

> Now Richard Young and Robert Williams are both on trial in this case. The fact that they are on trial together is not evidence that they were associated with each other or that either one is guilty. You should consider each Defendant separately. Each is entitled to have his case decided on the evidence and law that applies to him. If any evidence is limited to one Defendant, you should not consider it as to any other Defendant.

(*Id.*, PageID.1020–1021.) The trial court noted further that Williams' statement could not be used against Petitioner. (*Id.*, PageID.1021.)

As the Supreme Court has noted, "[j]oint trials general serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability— advantages which sometimes operate to the defendant's benefit." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). The fact that the joint trial did not operate to Petitioner's benefit and lead to his conviction does not automatically translate into a finding of ineffective assistance by counsel. Because Petitioner fails to demonstrate that the court of appeals' rejection of this assertion of ineffective assistance is contrary to, or an unreasonable application of, *Strickland*, Petitioner is not entitled to relief with respect to habeas ground III.

### 3. Ground IV—Failure to Object to Prosecutorial Misconduct and to Renew Motion Regarding Polygraph Results

In ground IV, Petitioner asserts that counsel was ineffective for failing to object to prosecutorial misconduct and for failing to renew his motion to introduce Hampton's polygraph results to the jury. The court of appeals rejected this claim on direct appeal, stating:

> As part of her plea agreement, Hampton was required to undergo a polygraph examination. The results were "inconclusive" regarding her statements about Young's involvement. Trial counsel moved to admit the polygraph and the trial court denied the motion, but left the door open for counsel to renew the request at trial if the prosecution opened the door. At trial, the prosecutor questioned Hampton about whether she saw Young hand Williams the bag. Young argues that the prosecutor opened the door and defense counsel should have objected and renewed his motion to introduce the polygraph evidence. However, it is clear from the record that merely presenting Hampton as a witness and questioning her about Young's involvement did not suffice to "open the door" for a renewed motion to introduce polygraph results. The only way for the door to be opened and the motion renewed

24

was if the prosecutor referenced the polygraph examination, which he did not. Trial counsel was not required to make a meritless motion. *People v. Ericksen*, 288 Mich. App. 192, 201, 793 N.W.2d 120 (2010).

*Williams*, 2017 WL 5615792, at *8.

As an initial matter, Petitioner fails to provide factual detail for the alleged prosecutorial misconduct to which he believes counsel should have objected. In any event, as discussed *supra*, Petitioner's claims of prosecutorial misconduct lack merit. Moreover, Petitioner fails to offer any evidence to overcome the court of appeals' determination that the prosecution did not "open the door" for defense counsel to renew his motion to introduce Hampton's polygraph results. A review of the record reveals that at no time did the prosecutor reference the polygraph, which would have been the only way for the prosecution to "open the door" to cross-examination regarding that issue. "[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

Accordingly, because Petitioner has failed to show that the court of appeals' rejection of this assertion of ineffective assistance is contrary to, or an unreasonable application of, *Strickland*, Petitioner is not entitled to relief with respect to habeas ground IV.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

25

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated:    September 4, 2024                  /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE

26